**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| **University of Maryland Students for Justice in Palestine,** | |
| Plaintiff, | **Case No. 8:24-cv-02683-PJM** |
| v. | **PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER[1] AND PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT** |
| **Board of Regents** et al. | |
| Defendants. | |

**MOTION FOR TEMPORARY RESTRAINING ORDER AND**
**PRELIMINARY INJUNCTION**

Plaintiff University of Maryland Students for Justice in Palestine moves the Court for a

Temporary Restraining Order and Preliminary Injunction against all Defendants for the

cancellation of Plaintiff's October 7 vigil.

---

[1] In accordance with FRCP 65(b)(1)(B), Plaintiff's counsel hereby certifies that it emailed the Defendants—their general counsel, their executive leadership, Defendant Pines himself—to provide them notice of this emergency motion upon filing it. And before its filing, Plaintiff's counsel had sent Defendant Pines a letter that went unanswered. Given the clarity of the facts and legal issues involved (as explained below), the Court is justified by the circumstances to grant a temporary retraining order immediately and without hearing from Defendants.

**TABLE OF CONTENTS**

TABLE OF CONTENTS ....................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

    A.    University of Maryland Students for Justice in Palestine is a recognized student group with a message to share.................................................................................. 2

    B.    University of Maryland Opens Facilities, Including McKeldin Mall, for Expressive Activities.................................................................................................................. 3

    C.    University of Maryland SJP receives permission to host an event for October 7 at McKeldin Mall....................................................................................................... 3

    D.    University of Maryland SJP Organizes a Vigil for October 7 to Raise Awareness on Israel's Genocide in Gaza ................................................................................. 3

    E.    University of Maryland Revokes Permission to Hold Vigil, Cancels All Expressive Events on October 7 After Pro-Israel Groups and Individuals Complain ..................... 4

ARGUMENT ......................................................................................................................... 6

I.    The Government's decision to cancel SJP's vigil gives the student organization standing to sue. .............................................................................................................................. 7

II.    The Government's one-day-only ban on all expressive events violates the first amendment. ............................................................................................................................ 8

    A.    Strict scrutiny applies to the Government's one-day-only ban................................... 8

        1.    The cancellation is content-based, because it regards the public meaning of October 7th. ....................................................................................................... 8

        2.    The Government's Day of Dialogue is speaker-based, because university-selected speakers are still presenting on October 7th............................................................ 10

        3.    The one-day-only ban is viewpoint-based, because the Government seeks to promote its Day of Dialogue. .................................................................................. 12

        4.    Strict Scrutiny applies because the government seeks to limit speech in a limited public forum. ...................................................................................................... 13

    B.    The Government's "Day of Dialogue" fails strict scrutiny. ..................................... 14

        1.    The Government has no legitimate interest, let alone a significant or compelling one. 14

        2.    The Government's Day of Dialogue is not narrowly tailored, because it is aimed at an imagined problem it tries to make real......................................................... 18

CONCLUSION ..................................................................................................................... 20

TABLE OF AUTHORITIES

## Cases

*ACLU v. Mote,* 423 F.3d (4th Cir. 2005) ...................................................................13, 14

*Am. C.L. Union of N. Carolina v. Tata*, 742 F.3d 563 (4th Cir. 2014)....................................12

*Am. Life League, Inc. v. Reno*, 47 F.3d 642 (4th Cir. 1995) ...............................................12

*Brown v. Ent. Merchants Ass'n*, 564 U.S. 786 (2011).........................................................8, 15

*Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five*, 470 F.3d 1062 (4th Cir. 2006).. 8

*Citizens United v. FEC*, 558 U.S. 310 (2010) .......................................................................10

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61 (2022) ..............................8

*Cox v. Louisiana,* 379 U.S. 536 (1965)...............................................................................18

*Elrod v. Burns*, 427 U.S. 347 (1976) ................................................................................6, 7

*Fairchild v. Liberty Independent School Dist.,* 597 F.3d 747 (5th Cir. 2010)..............................7

*Fusaro v. Cogan*, 930 F.3d 241 (4th Cir. 2019) ...............................................................8, 11

*Greater Philadelphia Chamber of Com. v. City of Philadelphia*, 949 F.3d 116 (3d Cir. 2020)...... 11

*Healy v. James*, 408 U.S. 169 (1972) ...................................................................................1

*Home Box Office, Inc. v. FCC*, 185 U.S. App. D.C. 142, 567 F.2d 9 (D.C. Cir. 1977)............. 18

*Hurley v. Irish-American Gay*, 515 U.S. 557 (1995) ...............................................................9

*KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006)..........................7

*Leathers v. Medlock*, 499 U.S. 439 (1991) .........................................................................12

*Lujan v. Defs. Of Wildlife,* 504 U.S. 555 (1992) ...................................................................7

*Matal v. Tam*, 582 U.S. 218 (2017)....................................................................................17

*McCullen v. Coakley*, 573 U.S. 464 (2014)..........................................................................14

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984).... 15

*Morse v. Frederick*, 551 U.S. 393 (2007) ...........................................................................17

*Nat'l Inst. of Fam. Life Advocs. v. Becerra*, 138 S.Ct. 2361 (2018) .................................. 9, 11, 19

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) .......................................................16, 17

*Newsom v. Albemarle Cty. Sch. Bd.*, 354 F.3d 249 (4th Cir. 2003)........................................6, 7

*Nken v. Holder*, 556 U.S. 418 (2009) ...................................................................................7

*People for the Ethical Treatment of Animals, Inc. v. N.C. Farm Bureau Fed'n, Inc.*, 60 F.4th 815 (4th Cir. 2023) ...................................................................................................10

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37 (1983) ...................................16

*R.A.V. v. St. Paul*, 505 U.S. 377 (1992) ...............................................................................8

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015)...............................................................9, 10, 11

*Riley v. National Federation of Blind of N.C., Inc.*, 487 U.S. 781 (1988)..................................9

*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995) .............................2, 12

*Schickel v. Dilger*, 925 F.3d 858 (6th Cir. 2019)..................................................................10

*Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147 (1969) .......................................14, 17

*Sons of Confederate Veterans, Inc. ex rel. Griffin v. Comm'r of Virginia Dep't of Motor Vehicles*, 288 F.3d 610 (4th Cir. 2002) ..........................................................................................12, 14

*Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011) .................................................................15

*Terminiello v. City of Chicago*, 337 U.S. 1 (1949) ...............................................................17

*Turner Broad. Sys. v. FCC*, 512 U.S. 622 (1994) ......................................................... 11, 12, 18

*Warren v. Fairfax County*, 196 F.3d 186 (4th Cir. 1999)........................................................13

*Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7 (2008)........................................6

**Other Authorities**

Application of the Convention on the Prevention and Punishment of the Crime of Genocide
   in the Gaza Strip (South Africa v. Israel) Order, 2024 I.C.J. Rep. 192 (January 2024) ... 16

## INTRODUCTION

The University System of Maryland ("USM") has declared a free expression blackout date on October 7, 2024. USM did so by banning all student-organized expressive events on every USM campus that day. This statewide ban now prevents the student group suing here—University of Maryland Students for Justice in Palestine ("UMD-SJP")—from hosting an interfaith vigil that day, even though the students got permission to do so from campus officials seven weeks ago.

The reason for this extraordinary measure is acknowledged by all sides. The Government got some complaints about UMD-SJP hosting an event on October 7th. Those complaints came from people who do not like UMD-SJP's views, and campus officials were pressured to act. Unfortunately, amidst that pressure, campus officials lost sight of the First Amendment.

USM, the University of Maryland, College Park ("UMCP"), and UMCP President Darryll J. Pines have decided that no student on any campus can speak on this day of significance, other than those selected by campus officials. This so-called "Day of Dialogue," during which only speakers who agree to convey the Government's message will be permitted to speak, is the Government's obvious effort to monopolize the conversation on October 7th. That is textbook viewpoint discrimination. It violates the First Amendment.

And when President Pines announced that he is cancelling all student-organized expressive events for October 7, he confessed that he did so, not because of specific issues or safety concerns, but "out of an abundance of caution." (Dkt. 1, Compl., Ex. D., Message from President Darryll J. Pines). The First Amendment, however, does not permit this "abundance."

The Supreme Court has repeatedly affirmed the sanctity of the university as a forum for students and student organizations to express and debate ideas freely. *Healy v. James*, 408 U.S. 169, 180 (1972). Universities may not create rules that target the viewpoints of certain student

organizations and may not justify transparently "neutral" rules with vagaries, stereotypes, or assumptions about the beliefs or actions of a student organization. *Id*.

Indeed, the Constitution's bar against viewpoint discrimination is vital to preserving freedom of speech at public colleges and universities. The danger of chilling individual thought and expression "is especially real in the University setting, where the State acts against a background and tradition of thought and experiment that is at the center of our intellectual and philosophic tradition." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 835-36 (1995). Once it has opened a forum for student expression, the University may not abruptly close it, even for one day, when some do not like the viewpoint certain students are expressing.

Yet that is exactly what the Government is doing by cancelling UMD-SJP's vigil. The result is ongoing irreparable harm to UMD-SJP and its student members. UMD-SJP carefully followed UMCP's process for getting event approval—including meeting with UMCP administrators about their plans—only for the Government to rescind that approval once others complained. If UMD-SJP cannot hold its vigil on October 7th, it will suffer significant injury to its mission of raising awareness of human rights abuses against the Palestinian people at UMCP.

This Court should grant Plaintiff's motion to prohibit the Government from having special rules on campus for October 7th and to reinstate Plaintiff's permission to host its vigil on McKeldin Mall on October 7th.

**STATEMENT OF FACTS**

**A.  University of Maryland Students for Justice in Palestine is a recognized student group with a message to share.**

The University of Maryland's Students for Justice in Palestine ("UMD-SJP") is a recognized student group on campus. (Dkt. 1, Verified Compl. ¶ 22.) Open to all students, the club is "organized around democratic principles" to carry out its mission to "educat[e] the campus

2

community about flagrant human rights violations committed by Israel" and to otherwise "push the cause for Palestine on UMD's campus." (Exhibit A - Affirmation of Abel Amene, ¶ 4.)

To that end, SJP organizes gatherings of all kinds—protests, discussions, movie screenings, cultural nights, and presentations. (Exhibit B – Affirmation of Daniela Colombi,  ¶ 4).

### B.  University of Maryland Opens Facilities, Including McKeldin Mall, for Expressive Activities

The University of Maryland has opened university facilities for recognized student groups to use. Such facilities include McKeldin Mall, "a nine-acre area in the heart of campus," well-known as the best place to raise awareness about an issue on campus – and a place where protests and awareness events regularly take place. (Dkt. 1, Compl. ¶ 21.) It is known to be "the place to use if you want to speak out about something." (Ex. A, ¶  7). Indeed, UMD-SJP has reserved this space several times in the past for its events, including previously during the current school year. (*Id.*)

### C.  University of Maryland SJP receives permission to host an event for October 7 at McKeldin Mall

On July 31, UMD-SJP sought permission from campus officials to host an event on October 7th on McKeldin Mall. (Dkt. 1, Compl. ¶ 24; Ex. C - Event Request Approval.) The group received an email confirming the reservation the same day. (*Id.*)

### D.  University of Maryland SJP Organizes a Vigil for October 7 to Raise Awareness on Israel's Genocide in Gaza

UMD-SJP immediately began to plan their event, to be co-hosted with Jewish Voice for Peace at the University of Maryland, which would consist of a vigil and interfaith prayers, as well as a teach-in on Palestinian history, culture and solidarity, a table sharing Palestinian arts and crafts, a visual display of kites, and a motif in Palestinian poetry. (Dkt. 1, Verif. Compl. ¶ 25; 27). UMD-SJP also invited several of its members who had personally lost family members in Gaza to speak.

3

(Dkt. 1, Verif. Compl. ¶ 25.).  The event would also include "a community space to grieve all innocent lives that have been lost in the past year, Palestinian and Israeli, while acknowledging the unique magnitude of Palestinian suffering as the death toll in Gaza climbs" (Dkt. 1, Verif. Compl. ¶ 27).

UMD-SJP chose October 7th, because they wished to express their message to the University of Maryland College Park community that October 7th marks the beginning of Israel's most recent genocidal campaign in Gaza, which has killed over 40,000 Palestinians, with some putting the number at over 186,000 indirect casualties.  (Dkt. 1, Verif. Compl. ¶ 26.).  Given that October 7th is a day of great significance, UMD-SJP felt it was important to express their message to fellow students on that day, not before or after. (*Id.*)

### E. University of Maryland Revokes Permission to Hold Vigil, Cancels All Expressive Events on October 7 After Pro-Israel Groups and Individuals Complain

On August 2, 2024, UMCP reached out to UMD-SJP requesting a meeting, which was scheduled for August 19, 2024. At the meeting, President Pines and Vice President for Student Affairs Patricia Perillo told UMD-SJP board members that the university was receiving pressure from groups to cancel UMD-SJP's October 7 reservation but assured the students that the administration was committed to protecting their free speech rights. (Dkt. 1, Compl. ¶ 26.). Pines and Perillo assured UMD-SJP that the group had followed all event planning and facility reservation policies and told UMD-SJP's board members that the reservation rightly belonged to UMD-SJP. (*Id.*) UMD-SJP, in turn, shared that although they had not finalized the exact details of their event, the purpose of their event was to host a vigil to commemorate Palestinian lives lost since the beginning of Israel's genocide in Gaza and to provide a space for their community to process their emotions and grieve together. (*See* Ex. A, ¶ 9; Ex. B, ¶10-11.).

4

Many requests to cancel UMD-SJP's October 7th event were very public. (Dkt. 1, Verif. Compl. ¶ 30.). For example, an open letter addressed to President Pines and other administrators demanded that the university "immediately shut down the event" should students "accuse Israel of committing genocide" or make "any mention that Israeli is an apartheid state" which the letter stated was "not agreed to by the US State Department" and would be viewed by the signatories as "an antisemitic attack." (Dkt. 1, Verif. Compl. ¶ 33; Ex. D, – Letter from the Community to Leaders of the University of Maryland.) Another petition by a group which frequently attempts to blacklist people who express opinions critical of Israel online, resorted to racist, anti-Palestinian tropes, suggesting the group would be engaged in "Terror on Campus" and said any use of campus space by UMD-SJP would be "disgusting." (Dkt. 1, Verif. Compl. ¶ 37.) That petition received 27,960 signatures (*Id.*).

On August 28, 2024, Perillo reached out to UMD-SJP and informed the group that parties outside of the university were concerned that UMD-SJP's event would "glorify violence." UMD-SJP shared that the event would honor the tens of thousands of lives lost, as well as to humanize Palestinians. (Dkt. 1, Verif. Compl. ¶ 42.) Four days later, on September 1, 2024, UMCP administration informed UMD-SJP that the university was revoking the group's October 7th reservation. (Dkt. 1, Verif. Compl. ¶ 44.)

On September 1, 2024, Pines sent an email to the campus community, declaring that "all [] expressive events" scheduled for October 7th would be cancelled. *See* Exhibit E – Pines Letter. Instead, only "university sponsored events that promote reflection" would be permitted on that date. (Dkt. 1, Verif. Compl. ¶ 47.) In his email, Pines admitted that this decision was based on an "overwhelming" number of complaints and "[n]umerous calls …to cancel and restrict the events that take place that day…." (Dkt. 1, Verif. Compl. ¶ 48.) Pines also noted that he had requested a

safety assessment from the University of Maryland Police Department ("UMPD"), which told him that "there is <u>no immediate or active threat[s]</u>" related to the event (Dkt. 1, Verif. Compl. ¶ 50.)

Nevertheless, the University System of Maryland decided to cancel all expressive activities students had planned for October 7th on every one of its campuses. *See* Exhibit F—USM on Marking October 7 ("USM is asking our campus communities to come together on October 7th to encourage activities that support a Day of Dialogue, a day dedicated to discourse and reflection"); *See also* Ex. E ("I have also consulted with [USM]…[and] [j]ointly, out of an abundance of caution, we concluded to host only university-sponsored events that promote reflection" on October 7th). Nonexpressive activities—like sporting events and practices, social gatherings, and classes—will continue as normal.

SJP brings this action to petition the court for relief to host its vigil on October 7th, as originally approved, and to otherwise order the Government to abandon its one-day-only ban on student-organized expressive activities.

## ARGUMENT

Plaintiff is entitled to a preliminary injunction because Plaintiff satisfies their burden to prove four things: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm, (3) that the injunction sought is in the public interest, and (4) the threat of injury outweighs any harm the injunction may cause. *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008).

Here, adjudication of the first factor subsumes the next three because the injuries for which the Plaintiff seeks the Court's relief concern their right to free speech and irreparable harm is presumed if the constitutional injury is proven. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Newsom v. Albemarle Cty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003). "The Supreme Court has explained that "loss of First Amendment freedoms, for even minimal periods of time,

unquestionably constitutes irreparable injury" justifying the grant of a preliminary injunction. *Newsom,* 354 F.3d 249, 261 (4th Cir. 2003) *(*quoting *Elrod,* 427 U.S. at 373). Similarly, the fact that Plaintiff's free speech claim is against the government means that "the third and fourth factors, harm to the opposing party and the public interest, merge." *Nken v. Holder,* 556 U.S. 418 (2009). And that is because "neither the government nor the public has any legitimate interest in enforcing an unconstitutional ordinance." See, e.g., *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006). Thus, this motion turns on Plaintiff's likelihood of success on the merits of their claims, which is extremely high. That analysis follows below.

### I.    The Government's decision to cancel SJP's vigil gives the student organization standing to sue.

To challenge the Government's "Day of Dialogue," Plaintiff must demonstrate that it is somehow obstructed by it. SJP must prove an injury-in-fact, causation, and redressability. *Lujan v. Defs. Of Wildlife,* 504 U.S. 555, 560-62 (1992)*.* When it comes to the First Amendment, "federal courts relax the prudential limitations and allow yet-unharmed litigants to attack potentially overbroad statutes." *Fairchild v. Liberty Independent School Dist., 597* F.3d 747, 754 (5th Cir. 2010). Plaintiff, however, need not rely on the relaxed standing the Supreme Court has established for First Amendment claims. Defendants have already cancelled SJP's October 7th vigil, and without the Court's intervention, will continue to try to make the student group alter their message by picking a different date.

Here, the vigil SJP wants to co-host with Jewish Voice for Peace on October 7th means that Plaintiff is itself "an object of the action…at issue." *Lujan,* 504 U.S. at 561-562. The Government gave SJP permission to host this vigil and then illegally took that permission away. In such situations, "there is…little question that the action…caused [them] injury." *Id.*

7

Defendants did so via statements published on their websites, leaving no doubt as to who is responsible for making the decision Plaintiff challenges. *See* Exhibits E-F. What President Pines, UMCP, and USM's Board of Regents have done, they can undo. Students for Justice in Palestine has standing to file this lawsuit against these Defendants.

## II.    The Government's one-day-only ban on all expressive events violates the first amendment.

The "most basic" principle of the First Amendment is that the Government cannot restrict speech "because of its message, its ideas, its subject matter, or its content." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 790–91 (2011). It is why the First Amendment's prohibition on viewpoint-based rules "is a constant." *Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five*, 470 F.3d 1062, 1067 (4th Cir. 2006). It is why content-based rules are "presumptively invalid." *R.A.V. v. St. Paul,* 505 U.S. 377, 382 (1992). And it is why speaker-based rules are treated like content based-regulations and "frequently deemed to be constitutionally suspect." *Fusaro v. Cogan*, 930 F.3d 241, 252 (4th Cir. 2019).

The Government's conduct here does all of the wrong things. It draws distinctions based on content, on who picked the speaker, and aims to promote one viewpoint and suppress another. Campus officials plan to do these things in a limited public forum and only against expressive activity. In doing so, Defendants' decision to cancel SJP's vigil triggers strict scrutiny not once, not twice, but four times over—a real First Amendment four-alarm fire.

### A.  Strict scrutiny applies to the Government's one-day-only ban.

1. The cancellation is content-based, because it regards the public meaning of October 7th.

The Government bans all expressive events on October 7th, and we all know why. It is because of the "topic discussed," making the rule "content-based on its face." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022). Defendant President Pines admits it

in his September 1st letter. He doesn't want student groups to gather on October 7th because of "the significance of the anniversary of October 7" and the special meaning of the day "for people here on our campus and across the globe." (Ex. E) Co-Defendant USM's statement echoes the sentiment and puts the October 7th ban's content consciousness beyond dispute when it proclaims that the day will be "dedicated to discourse and reflection." (Ex. F)

The First Amendment protects a speaker's freedom "to choose the content of his own message." *Hurley v. Irish-American Gay*, 515 U.S. 557, 573 (1995). By preventing SJP from gathering for a vigil on October 7, 2024, President Pines excludes SJP from the debate about the meaning of a day he acknowledges is unique. He does so when it is most relevant (on October 7th), "alter[ing] the content of their speech" and triggering strict scrutiny as a result. *Nat'l Inst. of Fam. Life Advocs. v. Becerra*, 138 S.Ct. 2361, 2371 (2018) (citing *Riley v. National Federation of Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988)).

SJP's decision to organize a gathering (a vigil) on a particular day (October 7th) with others (JVP) is content laden. It is like the "selection of contingents to make a parade," or a newspaper's "edited compilation of speech generated by other persons." *Hurley*, 515 U.S. at 570. The First Amendment maximally protects this kind of content-based conduct, applying strict scrutiny to all rules facially constraining it, even when the Government asserts a "benign motive." *Reed v. Town of Gilbert*, 576 U.S. 155, 165-66 (2015).

The Government's ban is content-based for another reason. While President Pines is cancelling SJP's vigil on October 7th alongside other expressive events, he is permitting other gatherings—to play sports, to socialize—that do not have an expressive purpose. At UMCP, the men's and women's golf teams, for example, are traveling[2] to compete on October 7th. So is the

---

[2] Composite UMD Sports Teams Schedule, available at: https://umterps.com/calendar

women's tennis team at Coppin State University.[3] And there will be a gathering on campus in College Park for people to "come practice, improve, or share their language skills in a casual setting."[4]   These nonexpressive gatherings will continue as planned *because* they lack an expressive purpose. Such content-based laws are "presumptively unconstitutional." *Reed*, 576 U.S. at 163-165 (finding a law to be "facially content-based" because it treated "political signs" differently than "event signs").

> 2.   <u>The Government's Day of Dialogue is speaker-based, because university-selected speakers are still presenting on October 7th.</u>

Speaker-based restrictions can be tricky. Such rules are not "automatically content based or content neutral." *Schickel v. Dilger*, 925 F.3d 858, 876 (6th Cir. 2019). Federal courts, nevertheless, are to be "deeply skeptical" of rules that "distinguish[] among different speakers." *Citizens United v. FEC*, 558 U.S. 310, 340 (2010).  That is because a speaker and their speech are so often "interrelated" that "[s]peech restrictions based on the identity of the speaker are all too often simply a means to control content." *Id.* This is especially true here, with a student organization (Students for Justice in Palestine) named for who they are and what their message is.

The Government's plan to only pick speakers who "promote reflection" distinguishes between the content of the speakers' expression, and "strict scrutiny must apply as much to 'obvious' content distinctions to 'more subtle' content distinctions." *People for the Ethical Treatment of Animals, Inc. v. N.C. Farm Bureau Fed'n, Inc.*, 60 F.4th 815, 830 (4th Cir. 2023). It does so "on its face" by devoting the day to "discourse and reflection." *Reed*, 576 U.S. at 163. The Government's "Day of Dialogue" is explicit that campus officials will select October 7th speakers

---

[3]    Composite Coppin State University Sports Teams Schedule, available at: https://coppinstatesports.com/calendar
[4] UMD Event calendar: available at: https://marylandglobal.umd.edu/about/events/event-calendar/language-house-language-chats-16

to convey a particular message—one that "honors our shared values of mutual respect and civil engagement." (Ex. E) Whatever that crisis management talking point actually means does not matter. It is enough for the court to conclude that the Government intends to select speakers who agree to provide the content Defendants want: "activities that support a Day of Dialogue." *See id.* Content-based discrimination is therefore embedded in the Government's October 7th scheme, because it places campus officials in the position of selecting messengers who are willing to "promote reflection" in the manner Defendants deem best.

But even if this Court considers the Government's preference for university-selected speakers to be facially neutral, it too is subject to strict scrutiny if the "speaker preference reflects a content preference." *Fusaro*, 930 F.3d at 252. *See Greater Philadelphia Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 139 (3d Cir. 2020) (speaker-based rules "demand strict scrutiny" if they reflect either the Government's "aversion to what the disfavored have to say" or "preference for the substance of what the favored speakers have to say."). Here, the Government admits that its speaker preferences are a "means to control content." *Reed*, 576 U.S. at 170**.**

Defendants proudly tout their Day of Dialogue, with university-selected speakers delivering content meant to encourage students "to engage with one another across our differences." Speaker-based rules like this run the obvious risk that 'the State has left unburdened those speakers whose messages are in accord with its own.'" *Nat'l Inst. of Fam. Life Advocs.* 138 S.Ct. at 2378.

The problem is particularly acute here, where the Government is "discriminat[ing] among…different speakers within a single medium." *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 659 (1994). The Government makes clear that there will be speakers and events on campus on October 7th, but they will all be led by university-selected speakers.  This micromanagement of

campus discourse creates "dangers of suppression and manipulation" and "distort[s] the market of ideas." *Id.* at 659-61; *see also Leathers v. Medlock*, 499 U.S. 439, 448 (1991). Thus, unless the "differential treatment" can be "justified by some special characteristic" of the speakers singled out, such discrimination triggers strict scrutiny. *Turner Broad. Sys.*, 512 U.S. at 659-60.

Students for Justice in Palestine is a well-respected organization on campus. They have successfully organized events on university grounds for years, and as recently as last week. (Dkt. 1, Verif. Compl. ¶ 21.) This track record makes it impossible for the Government to justify its extreme measure "by some special characteristic" of these students.

> 3. The one-day-only ban is viewpoint-based, because the Government seeks to promote its Day of Dialogue.

"It is axiomatic," the Supreme Court has held, "that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 828 (1995). The universality of this axiom is why viewpoint discrimination is "presumptively unconstitutional" in all circumstances. *Sons of Confederate Veterans, Inc. ex rel. Griffin v. Comm'r of Virginia Dep't of Motor Vehicles*, 288 F.3d 610, 623 (4th Cir. 2002). *See Am. C.L. Union of N. Carolina v. Tata*, 742 F.3d 563, 569 (4th Cir. 2014) ("the government may not viewpoint-discriminate in any forum"). To avoid viewpoint discrimination and the strict scrutiny that comes with it, a rule must thus be "justified without reference…[to] the violator's message or point of view." *Am. Life League, Inc. v. Reno*, 47 F.3d 642, 648–49 (4th Cir. 1995).

But viewpoint discrimination imbues the Government's entire project here. Campus officials have banned all expressive activities on every campus to impose a one-day monopoly of the discourse. Why? To "encourage activities that support a Day of Dialogue—a day dedicated to discourse and reflection." Ex. F. This boilerplate is a view that Defendants have taken extreme

measures to advance. On October 7th, "only university-sponsored events that promote reflection" will be permitted. The criteria campus officials will use to determine which speakers "promote reflection" and which ones do not is not stated. But the Government admits that it will be a content-based decision aimed at fostering the university's views.

    4.   <u>Strict Scrutiny applies because the government seeks to limit speech in a limited public forum.</u>

A limited public forum is one that "the government has purposefully opened to the public, or some segment of the public for expressive activity." *ACLU v. Mote,* 423 F.3d 438-443 (4th Cir. 2005). When the government restricts speech in a limited public forum, the restriction is subject to strict scrutiny when it "excludes a speaker who falls within the class to which a designated [limited] public forum is made generally available." *Warren v. Fairfax County*, 196 F.3d, 186, 193 (4th Cir. 1999) (brackets original) (internal quotations omitted).

The outdoor areas at the College Park campus are a limited public forum because the University opens these areas for students to express themselves and the October 7th restrictions are subject to strict scrutiny because they apply to Plaintiff, a group of students at the university.

The outdoor spaces of universities are generally limited public forums in the Fourth Circuit. *Mote*, 423 F.3d at 443. *Mote* is, in fact, especially on point because it also specifically involved the University of Maryland. *Id.* The University of Maryland—then and now—opens its outdoor spaces for student expression. Indeed, UMD-SJP has expressed itself in the McKedlin Mall before, where the University of Maryland has now restricted its speech. (Dkt. 1, Verif. Compl. ¶ 21.)

In limited public forums, strict scrutiny applies to any speech restriction on a person or group to whom the forum is generally made available. *Warren*, 196 F.3d at 193. In the university context, that applies to any speech that is "requested or sponsored by any member of the campus

community." *Mote*, 423 F.3d at 444. There is no question that UMD-SJP fits this standard. UMD-SJP members are all students at the University of Maryland. (Dkt. 1, Verif. Compl. ¶ 22.) Furthermore, UMD-SJP has held countless events at the university in the past, making it clear UMD-SJP is an organization to whom the forum is generally made available. (Dkt. 1, Verif. Compl. ¶ 21.) Strict scrutiny applies to Defendant's cancellation of UMD-SJP-s October 7 vigil.

## B. The Government's "Day of Dialogue" fails strict scrutiny.

Because strict scrutiny applies, Pines bears the heavy burden of demonstrating that he picked "the least restrictive means of achieving a compelling state interest." *McCullen v. Coakley*, 573 U.S. 464, 478 (2014). But the Government's ban on all October 7th events fails whatever scrutiny this Court chooses to apply, because it burdens too much and furthers too little. Indeed, even if the Court considers the October 7th ban to be a neutral time, place, and manner restriction, the Government must still prove that the rule is "narrowly tailored to serve a significant government interest." *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 151 (1969). With an illegitimate interest not advanced by its half-baked scheme, the Government's Day of Dialogue withers under any scrutiny.

1. <u>The Government has no legitimate interest, let alone a significant or compelling one.</u>

The Government's purpose here—"to manipulate the public debate through coercion rather than persuasion"—is not a legitimate one. *Sons of Confederate Veterans, Inc. ex rel. Griffin*, 288 F.3d at 622. They admit that purpose explicitly. The rhetoric concerning UMD-SJP's October 7th event, Pines claims, has been "charged" and "intense." So, to placate the "[n]umerous calls…to cancel and restrict" Plaintiff's vigil, the Government assumed a totalitarian monopoly of the discourse: "only university-sponsored events that promote reflection" will be allowed. This purpose is on its face an effort to control campus debate on October 7th.

14

The Government's effort to do so as part of a "Day of Dialogue" does not somehow legitimize its illegitimate interest. *See Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 579 (2011) (the Government interest is inadequate if it "turns on nothing more than a difference of opinion."). Rather, an interest like this, one that is aimed at "exclud[ing] the expression of certain points of view from the marketplace of ideas," allows federal courts to "immediately invalidate the rule." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984).

Here, expressive activities that do not "promote reflection" (specifically the kind of reflection the Government prefers) are excluded from the Day of Dialogue. That would prevent students who want to campaign for their favored presidential candidate on October 7th from doing so. It would stop students from organizing about all public issues for one day, even those far afield from Defendants' concerns—a controversial statewide literacy plan, medical waste washing onto Ocean City beaches, or whether Governor Moore is doing enough to deal with rising traffic fatalities. And it would prohibit students from using October 7th to advocate for its longstanding demand that UMCP divest from arms manufacturers that make weapons for Israel's use. On October 7th, all of this speech is banned no matter how connected or unconnected it is to the date on the calendar.

While the First Amendment has "permitted restrictions upon the content of speech in a few limited areas," neither Plaintiff's speech nor other expressive speech banned on October 7th fit within the "well-defined and narrowly limited classes" of speech that can be regulated without violating the First Amendment. *Brown,* 564 U.S. at 790–91. There is no evidence or reasonable argument that the vigil Plaintiff has not hosted yet will contain speech that is obscene, inciting, or tantamount to fighting words. *Id.* And absent such a finding, the Government's decision to displace

15

SJP's vigil with a university-controlled Day of Dialogue cannot be squared with the First Amendment. *See Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 61–62 (1983) ("We have never held that government may allow discussion of a subject and then discriminate among viewpoints on that particular topic").

Rather than posing a novel threat requiring unprecedented restrictions, Plaintiff's speech is consonant with the "profound national commitment" memorialized by the First Amendment: "that debate on public issues be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan,* 376 U.S. 254, 270–71 (1964). The vigil SJP seeks to host on October 7th will memorialize the tragedy on terms in-line with the conclusions of major international institutions and that mirror the emotional valence these staid institutional actors use in their official documents.

There are arrest warrants for two Israeli leaders pending before the International Criminal Court for "[s]tarvation of civilians as a method of warfare," "extermination," and "[i]ntentionally directing attacks against a civilian population," among other crimes.[5] A decision from the International Court of Justice aims to avoid what preliminary evidence indicates is a genocide. Application of the Convention on the Prevention and Punishment of the Crime of Genocide in the Gaza Strip (South Africa v. Israel) Order, 2024 I.C.J. Rep. 192 (January 2024) ("the military operation conducted by Israel…has resulted in tens of thousands of deaths and injuries, and the destruction of homes, schools, medical facilities and other vital infrastructure, as well as displacement on a massive scale"). The crux of Plaintiffs' political message is not different than the messages conveyed by International Criminal Court's prosecutor or the International Court of Justice's panel of judges.

---

[5]    https://www.icc-cpi.int/news/statement-icc-prosecutor-karim-aa-khan-kc-applications-arrest-warrants-situation-state

And though Plaintiffs' political speech may include "unpleasantly sharp attacks," the First Amendment's protections do not depend on a person's choice of words. *New York Times Co.*, 376 U.S. at 271. The fact that Plaintiffs' political messages may be "offensive to some of their hearers" does not mean Defendants can censor them. *Matal v. Tam*, 582 U.S. 218, 243–44 (2017). That is not how the First Amendment works.

Plaintiffs are speaking out about an ongoing genocide—the categorical destruction of a group of people—done with American weapons and live-streamed to our phones. Plaintiffs' political messages are grim and upsetting to some, but that is a consequence of the subject matter itself rather than the time, place, or manner of the expression. "Giving offense is a viewpoint." *Matal*, 582 U.S. at 220. Nothing about Plaintiffs' speech puts it within the "vanishingly small category of speech that can be prohibited because of its feared consequences." *Morse v. Frederick*, 551 U.S. 393, 438 (2007).

The heckler's veto doctrine, one of the oldest and most venerable in First Amendment jurisprudence, also stands in the way of the Government's Day of Dialogue serving as a legitimate interest. *See Terminiello v. City of Chicago,* 337 U.S. 1, 5 (1949). Indeed, courts use this doctrine to protect speech even where or when it might incur a hostile reaction from an audience. In *Street v. New York,* for example, a man was convicted for "publicly defy[ing] ... or cast[ing] contempt upon (any American flag) by words." 394 U.S. 576, 590 (1969). The Court invalidated the conviction, rejecting the state's justification that the man's speech had a "tendency ... to provoke violent retaliation." *Id.* at 592. The heckler's veto doctrine also protected a civil rights leader's peaceful speech during a lunch counter sit-in protest, despite the state's alleged fear that "'violence was about to erupt' because of the demonstration." *Cox v. Louisiana,* 379 U.S. 536, 550

17

(1965). As the Court said in *Cox,* "constitutional rights may not be denied simply because of hostility to their assertion or exercise." *Id.* at 551 (internal quotation marks omitted).

The Government's interest in suppressing SJP's vigil to "promote reflection" is not a legitimate interest, let alone a substantial or compelling one.

> 2. <u>The Government's Day of Dialogue is not narrowly tailored, because it is aimed at an imagined problem it tries to make real.</u>

Just because the Government's purported interests are "important in the abstract" does not relieve them of their duty to prove that its conduct will "in fact advance those interests." *Turner Broad. Sys.*, 512 U.S. at 664. To this end, the Government must prove that "the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Id.; See Home Box Office, Inc. v. FCC,* 185 U.S. App. D.C. 142, 169, 567 F.2d 9, 36 (D.C. Cir. 1977).

Here, Defendants acknowledge that "there is no immediate or active threat" to any events on campus so the harm sought to be avoided is admittedly not anticipated. Pines guesses that the sensitivities of October 7th are best dealt with by "prioritizing safety and reflection" through a "Day of Dialogue." But this is nonsense on stilts, and the students on campus will see it as such. By trying to cater to one constituency, the Government alienates another much larger group of students who sympathize with Palestinians. Students will notice and either not participate or (as college students traditionally do) subvert it. Rather than promote reflection, the Government's Day of Dialogue will catalyze student backlash.

Furthermore, the Government's ban on all expressive activity on October 7th is hopelessly overinclusive and underinclusive. It is overinclusive, because it is a full and complete ban on all expressive activity for one day, even expressive activity unrelated to Palestine and Israel. Student groups engaged in election activity, for example, won't be allowed to gather and organize, to host

events, etc.—even though the violence in Palestine is a central issue of this year's presidential election which concludes less than one month after October 7th.

It is also overinclusive because it shuts down SJP's ability to gather on one day next month no matter how and even if the student group does so to "promote reflection." The expressive activity SJP plans for October 7th is not different in kind from the other events SJP has successfully planned and managed, in accordance with UMCP policies, and could even be said to "promote reflection." But campus officials are not only prohibiting SJP from co-hosting a vigil with JVP, they are preventing SJP from doing anything expressive—a protest poster making session inside a classroom, a voter registration drive in a common area, or campus canvassing in the quad—no matter how conspicuous or inconspicuous, whether it includes ten students or ten thousand.

The Government's cancellation is underinclusive as well. That is because campus officials will allow SJP to do the exact same event on October 6th or October 8th. If the event was an actual problem, it would be one before October 7th and remain one after. So, a well-tailored policy would track the problematic event, rather than a date on the calendar. Another source of underinclusivity are the non-expressive events—like sports games and practices, classes, and social gatherings— will proceed as normal. The Government allows this even though these nonexpressive events do not "encourage conversation, compassion, and civility" as Defendants' vaunted Day of Dialogue is intended to do. "Such underinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Nat'l Inst. of Fam. Life Advocs.*, 138 S.Ct. at 2376.

*       *       *

The Government's October 7th scheme aims at an imaginary problem and does its best to make it real. These students have expressed themselves with passion and intelligence—about

Palestine, Israel, and an ongoing genocide. They have done so following campus rules, with creativity and persistence, and in a manner that has drawn support to their cause. Students do not need the Government's "Day of Dialogue." They need the First Amendment's protection.

## CONCLUSION

For the reasons above, the Court should GRANT Plaintiff's motion and prohibit the Government from having special rules on campus for October 7th. The Court should also order Defendants UMCP and President Pines to reinstate Plaintiff's permission to host its vigil on McKeldin Mall on October 7th.

Dated: September 18, 2024

Respectfully submitted,

/s/Lena Masri
Lena Masri
Gadeir Abbas^
**CAIR LEGAL DEFENSE FUND**
453 New Jersey Ave SE
Washington, D.C. 20003
T: (202) 488-8787
ldf@cair.com

*^Licensed in VA; not in D.C., practice limited to federal matters*

Radhika Sainath*
Tori Porell*
**PALESTINE LEGAL**
55 Exchange Place
New York, NY, 10005
T: (312) 212-0448
radhika@palestinelegal.org
tporell@palestinelegal.org
**Pro Hac Vice* admissions pending